Laura **DEL RIO**, individually and as next friend of Frederick Wayne Del Rio, a minor, and as personal representative of the Estate of Michael Norman John Del Rio, Plaintiff–Appellant,

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 86–3404.

United States Court of Appeals,
Eleventh Circuit.

Dec. 4, 1987.

---

6. See note 4 *supra.*

Steven J. Baker, Baker & Berrigan, Pensacola, Fla., for plaintiff-appellant.

Michael P. Finney, Asst. U.S. Atty., Pensacola, Fla., John C. Hoyle, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant-appellee.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, Senior District Judge.

VANCE, Circuit Judge:

Appellant Laura Del Rio brought this medical malpractice action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–2680. She bases her claims on behalf of herself and her children on the negligent administration of prenatal care by active duty military medical personnel. Ms. Del Rio seeks damages for her personal injuries. In addition, as guardian of her infant son Fredrick Wayne Del Rio, she seeks to recover for his injuries. As personal representative of the estate of Michael Norman John Del Rio, she seeks damages for wrongful death. The district court, relying on *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), dismissed the action for lack of subject matter jurisdiction. We affirm in part, reverse in part, and remand.

## FACTUAL BACKGROUND [1]

In June, 1983 Laura Del Rio sought prenatal care at the Naval Aerospace and Regional Medical Center in Pensacola, Florida. Ms. Del Rio informed the hospital staff during her initial consultation of those aspects of her medical history which increased the likelihood of developing prenatal problems.[2] In July, 1983 appellant began to experience problems with her pregnancy, including cramping, bleeding and severe nausea. Ms. Del Rio alleges that due to the failure of the medical center staff to take into account her complications

and to treat her accordingly, she went into premature labor and was admitted to the medical center on November 7, 1983. The hospital staff was unsuccessful in its attempts to stop labor, and two days later appellant was transferred to Keesler Air Force Base for intensive prenatal care. At Keesler, appellant gave birth by caesarean section to twin children, Fredrick Wayne Del Rio and Michael Norman John Del Rio.

Appellant alleges that as a result of the negligent prenatal care, Fredrick suffered bodily injury and Michael lived only five days. There are no allegations of any post-delivery injuries to either child. In addition, Ms. Del Rio alleges that she suffered physical injury as a result of the hospital staff's negligence. Ms. Del Rio was serving on active duty as a Hospital Corpsman Second Class throughout her treatment.

## I.

The Federal Tort Claims Act ("FTCA") provides that the United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1976). The Act's "sweeping" waiver of the government's immunity from suit is limited by several statutory and judicial exceptions. *United States v. Yellow Cab Co.*, 340 U.S. 543, 547–50, 71 S.Ct. 399, 402–04, 95 L.Ed. 523 (1951). *See also* 28 U.S.C. § 2680. In *Feres* the Supreme Court created a judicial exception for injuries incident to military service.[3] The

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The plaintiff appeals from a district court order dismissing the complaint for lack of subject matter jurisdiction. We therefore accept as true, for purposes of this appeal, the factual allegations contained in the complaint. *See Radovich v. Nat'l Football League*, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727 (11th Cir.1982).

2. Appellant alleges that she informed the medical staff of those aspects of her medical history which placed her at risk of prenatal complications, including her family's history of

multiple births, her history of miscarriages and infertility and her exposure to diethylstilbestrol (DES).

3. The *Feres* decision involved three actions against the United States. In the *Feres* case the executrix of Feres' estate brought a wrongful death action alleging that Feres was quartered negligently in barracks with a defective heating plant. *Feres*, 340 U.S. at 136–37, 71 S.Ct. at 155. The plaintiffs in the other two actions, *Jefferson v. United States* and *United States v. Griggs*, alleged medical malpractice on the part of military physicians. *Id.* at 137, 71 S.Ct. at 155.

*Feres* Court held that the FTCA did not waive the government's sovereign immunity "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159. The Court provided four rationales for its holding: (1) the absence of parallel private liability; (2) the fact that because the FTCA requires the recognition of state law, it would be irrational to leave injured servicemen dependent on geographic considerations over which they have no control; (3) the "distinctively federal" relationship between the government and members of the military; and (4) the availability of statutory compensation. *Id.* at 141–46, 71 S.Ct. at 156–59.

Shortly after the *Feres* decision the Supreme Court indicated that the most important rationale for the *Feres* doctrine was the "peculiar and special relationship of the soldier to his superiors" and "the effects of the maintenance of such suits on military discipline...." *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954). *See also United States v. Muniz*, 374 U.S. 150, 162, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963). Despite the language tending to limit the *Feres* rationales, the Court in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), began to reassert some of the original rationales underlying the *Feres* doctrine.[4] The Court reasoned that a suit by a serviceman under the FTCA against the United States was precluded for the following reasons:

> First, the relationship between the Government and members of its Armed Forces is " 'distinctively federal in character[;]' " it would make little sense to

have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury. Second, the Veterans' Benefit Act establishes, as a substitute for tort liability, a statutory 'no fault' compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government. [Third] ... "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty...."

431 U.S. at 671–72, 97 S.Ct. at 2058 (citations omitted) (quoting *Feres*, 340 U.S. at 143, 71 S.Ct. at 158); *United States v. Standard Oil Co.*, 332 U.S. 301, 305, 67 S.Ct. 1604, 1607, 91 L.Ed. 2067 (1947); *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954)). *See also Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

The Supreme Court affirmed *Feres* most recently in *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), and *United States v. Johnson*, — U.S. —, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987).[5] In *Shearer*, the Supreme Court relied heavily on the military discipline factor. 473 U.S. at 56–57, 105 S.Ct. at 3043–44. The Court suggested that the other two factors, though present in the case, were "no longer controlling." *Id.* at 58 n. 4, 105 S.Ct. at 3043–44 n. 4. The Court in *Johnson*, however, unequivocally

---

**4.** In *Stencel* a serviceman injured by an aircraft ejection system brought suit against Stencel, the manufacturer of the system, and the United States. The manufacturer filed a cross-claim against the government for indemnity, alleging that the government's actions caused the malfunction, if any, of the ejection system. Applying each of the three factors, the Court held that both claims against the United States under FTCA were barred by *Feres*. *Stencel*, 431 U.S. at 673, 97 S.Ct. at 2059.

**5.** *Johnson* involved an FTCA action brought on behalf of a serviceman killed during a coast guard rescue mission on the high seas. *Id.*, —

U.S. at —, 107 S.Ct. at 2065. Applying the three *Feres* factors, the Court held that the FTCA bars a wrongful death action on behalf of a serviceman against a civilian employee of the federal government. *Id.* at —, 107 S.Ct. at 2069. Even before the *Johnson* decision, courts had recognized " 'it is beyond question that [the *Feres* doctrine] is the law.' " *Brown v. United States*, 739 F.2d 362, 365 (8th Cir.1984), *cert. denied*, 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985) (quoting *Laswell v. Brown*, 683 F.2d 261, 265 (8th Cir.1982), *cert. denied*, 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983)).

expanded the *Feres* analysis to include all three rationales. To determine whether a claim is barred by *Feres*, therefore, we must consider thoroughly all three rationales, and apply each of them to the facts of the case.

## II.

■ The rationales underlying the *Feres* doctrine preclude appellant's suit against the United States on the alleged negligent prenatal treatment she received while on active duty in the navy.[6] The federal relationship, the first factor, "is implicated to the greatest degree when a service member is performing activities incident to his federal service." *Johnson*, 107 S.Ct. at 2068. Appellant asserts that neither her condition nor the object of the medical treatment, delivery of a healthy child, is incident to her military service. The first factor, however, clearly operates in this case. Ms. Del Rio's active military status permitted her to seek prenatal care at the military hospital. The medical treatment administered to Ms. Del Rio therefore was incident to her military service. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1150 (5th Cir. Unit B 1981); *Vallance v. United States*, 574 F.2d 1282, 1283 (5th Cir.), *cert. denied*, 439 U.S. 965, 99 S.Ct. 453, 58 L.Ed.2d 423 (1978); *Shults v. United States*, 421 F.2d 170, 171–72 (5th Cir.1969).

■ The second factor of the *Feres* doctrine is implicated also in this case because appellant will receive continuing medical treatment by the government for any injury sustained which is incident to service. In analyzing the third factor, it is clear that a medical malpractice suit against active military physicians "would

involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Shearer*, 473 U.S. at 59, 105 S.Ct. at 3044. The district court correctly concluded that the medical malpractice case would require the court to second-guess the medical decisions of the military physicians. The malpractice suit would require the officers to "testify in court as to each other's decisions and actions." *Stencel*, 431 U.S. at 673, 97 S.Ct. at 2059. Obviously the suit *"might* impair essential military discipline" because her position as a navy hospital corpsman places the discipline, supervision and control of her working group at issue. *Shearer*, 473 U.S. at 56, 105 S.Ct. at 3043 (emphasis added). Ms. Del Rio's suit against the government under the FTCA is clearly barred by *Feres* and therefore the district court's decision dismissing her claim for lack of subject matter jurisdiction is affirmed.

## III.

Appellant contends that even if Ms. Del Rio's personal injury claim is barred by *Feres*, the children are eligible to recover for the injuries they sustained as a result of the negligent prenatal care. Appellant argues that the children's claims are not derived from the mother's injury, but are independent.[7] When dependents of service members receive negligent medical treatment from military medical personnel, the *Feres* doctrine has not applied to bar claims. *See, e.g., Burgess v. United States*, 744 F.2d 771 (11th Cir.1984) (serviceman's child received post-delivery injury at army hospital); *Costley v. United States*, 181 F.2d 723 (5th Cir.1950) (service-

---

**6.** The Ninth Circuit recently ruled in *Atkinson v. United States*, 825 F.2d 202 (9th Cir.1987), that a servicewoman's malpractice suit against the government for negligent medical treatment during her pregnancy was barred by the *Feres* decision. The Ninth Circuit noted that the recent Supreme Court decision in *Johnson* appeared "to breathe new life into the first two *Feres* rationales." *Id.* at 205–06. Although the Ninth Circuit reaffirmed its belief that military discipline would not be undermined by a malpractice suit for care rendered incident to the servicewoman's pregnancy, it stated that the ap-

plication of the first two factors compelled the court to affirm the district court's decision dismissing the suit for lack of subject matter jurisdiction. We do not agree entirely with the Ninth Circuit's analysis of the third factor.

**7.** Under Florida law a child who suffers prenatal injuries and is born alive has an independent cause of action for the negligence. *Day v. Nationwide Mut. Ins. Co.*, 328 So.2d 560 (Fla.Dist. Ct.App.1976).

man's wife treated negligently at army hospital during delivery of her child); *Portis v. United States*, 483 F.2d 670 (4th Cir.1973) (medical malpractice suit by serviceman's child treated in a military hospital); *Williams v. United States*, 435 F.2d 804 (1st Cir.1970) (serviceman's child denied treatment at government hospital).

Relying on *Scales v. United States*, 685 F.2d 970 (5th Cir.1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983), the district court held that *Feres* barred the children's claims because the medical treatment administered to the twins is "inherently inseparable" from the medical care rendered to appellant. In *Scales* the Fifth Circuit held that *Feres* barred a claim by an infant who alleged that the government was negligent in administering a rubella vaccination to his mother and in treating her when she contracted rubella which caused him to be born with congenital rubella syndrome. The *Scales* court relied almost exclusively on the rationale that the maintenance of the suit would impair impermissibly military discipline: "While [the first] two prongs of the rationale underlying the *Feres* doctrine are recognized frequently in cases discussing the rule, the third predicate for application of the doctrine stands out as the most important consideration in any single case. It is the concern for preserving military discipline." *Scales*, 685 F.2d at 972–73 (citations omitted). The continuous evolution of the *Feres* doctrine by the Supreme Court, however, now requires the application of all three rationales of the *Feres* decision.[8]

■■■ Application of the three broad rationales to appellant's claims on behalf of Fredrick Wayne Del Rio indicates that the maintenance of his personal injury claim will not circumvent the purposes of the FTCA. *See Stencel*, 431 U.S. at 667, 97 S.Ct. at 2055. The three *Feres* rationales clearly are not present in a suit by the child of a service person for the negligence of military medical staff.

First, the child does not have a "distinctively federal" relationship with the government. A civilian child whose parent is a member of the service "hardly bears the relationship to government that a soldier on duty does." *Lombard v. United States*, 690 F.2d 215, 232 (D.C.Cir.1982) (Ginsburg, J., concurring in part and dissenting in part), *cert. denied*, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983). Second, the government failed to identify any statutory benefits to which Fredrick is entitled. Third, while a suit by Fredrick may require the same type of inquiry into the physician's decisions as a suit by Ms. Del Rio, military discipline is not implicated to the same degree. *See id.* at 233 (Ginsburg, J., concurring in part and dissenting in part). The Court in *Johnson* was concerned about the possibility that a suit by service personnel "could undermine the commitment essential to effective service...." *Johnson*, — U.S. at —, 107 S.Ct. at 2069. A suit by a civilian child for the negligent administration of prenatal care need not impair the *esprit de corps* necessary for effective military service, nor will it require the court to second-guess a decision by military personnel unique to the accomplishment of a military mission. The three factors thus weigh in favor of permitting appellant to maintain the claims against the government on behalf of her injured child. The first two factors are not

---

**8.** Several courts have held that the *Feres* doctrine applies to bar children's claims for genetic injuries caused by a servicemember's exposure to radiation or chemicals during active military service. *See, e.g., Mondelli v. United States*, 711 F.2d 567 (3rd Cir.1983), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984); *Lombard v. United States*, 690 F.2d 215 (D.C.Cir. 1982), *cert. denied*, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983); *Monaco v. United States*, 661 F.2d 129 (9th Cir.1981), *cert. denied*,

456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284; *In re Agent Orange Prod. Liab. Litig.* 506 F.Supp. 762 (E.D.N.Y.1980). Like the Fifth Circuit's decision in *Scales*, each of these decisions relies on the impact on military discipline. The Supreme Court's recent decision in *Johnson* requires this court to consider all of the policies underlying the *Feres* doctrine. Thus the *Feres* analysis employed by these courts is no longer adequate.

implicated, and the impact on military discipline is attenuated.[9]

■ Ms. Del Rio's wrongful death claim as personal representative of Michael Norman Del Rio presents a much more difficult question. Florida's Wrongful Death Act, Fla.Stat. § 768.16–.27, creates in the statutory beneficiaries an independent cause of action. *Variety Children's Hosp. v. Perkins*, 445 So.2d 1010, 1012 (Fla.1983); *id.* at 1013 (Ehrlich, J. concurring) (wrongful death action is not derivative). A wrongful death action "is not a derivative action in a technical sense because it awards damages suffered by the parent independently of any right of action in the deceased minor." *Stokes v. Liberty Mut. Ins. Co.*, 213 So.2d 695, 697 (Fla.1968); *see Florida Clarklift, Inc. v. Reutimann*, 323 So.2d 640, 641 (Fla.Dist.Ct.App.1975), *cert. denied*, 336 So.2d 1181 (Fla.1976) (philosophy of Florida's Wrongful Death Act is to allow recovery for pain and suffering of the living rather than the dead). The nature of Ms. Del Rio's claim as personal representative of Michael Norman John Del Rio is to provide her, as a surviving parent, with some relief from the death of her minor child. The effect of the Florida statute is to award damages to Ms. Del Rio, an active member of the armed services, for an injury personal to her. In this case we conclude that the *Feres* analysis of the wrongful death claim resembles the analysis of Ms. Del Rio's personal injury claim. Ms. Del Rio's wrongful death claim is barred therefore by *Feres*.

Accordingly, we affirm the district court's dismissal of the plaintiff-appellant's personal injury claim and wrongful death claim as personal representative of Michael Norman John Del Rio for lack of subject matter jurisdiction. We reverse the district court's dismissal of Ms. Del Rio's claim as next friend of Fredrick Wayne Del Rio and remand this claim for further proceedings.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

9. In *Hinkie v. United States*, 715 F.2d 96 (3rd Cir.1983), the court held that the *Feres* doctrine barred the claim of the serviceman's spouse, the claim of the deceased child's estate, and the claim of the surviving child. Like the other pre-*Johnson* decisions, however, *see supra* note 8, the court based its decision on only one of the *Feres* factors. *See id.* at 98.