Mildred IRVIN and Silas Irvin, individually and as parents and next friends of Quintessa Irvin, deceased, Plaintiffs–Appellants,

v.

UNITED STATES of America and the Department of the Army, Defendants–Appellees.

No. 87–5630.

United States Court of Appeals, Sixth Circuit.

Argued March 18, 1988.

Decided April 27, 1988.

Jeff A. Crow, Jr. (argued), Memphis, Tenn., for plaintiffs-appellants.

W. Hickman Ewing, U.S. Atty., Memphis, Tenn., Robert M. Williams, Jr. (argued), for defendants-appellees.

Before JONES and GUY, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Mildred Irvin and Silas Irvin, individually and as parents and next friends of decedent Quintessa Irvin, appeal from the district court's order granting appellees' motion to dismiss. For the following reasons, we affirm the district court's judgment.

## I.

Mildred Irvin became pregnant in early 1984 while on active duty in the United States Army. The United States Army provided her prenatal care. Decedent Quintessa Irvin was born on August 26, 1984 and died on August 29, 1984, at the age of four days. At the time of Quintessa Irvin's death, Mildred Irvin was enlisted in the United States Army.

On July 25, 1986, appellants filed this action in district court against the United States and the Department of the Army jointly and severally. The complaint contains two counts. Count one is brought pursuant to the Federal Tort Claims Act (FTCA). Count two is brought pursuant to 42 U.S.C. § 1983.[1] Count one alleges that this cause of action arises out of negligent medical care and treatment rendered Mildred Irvin and the deceased Quintessa Irvin by the agents, servants and employees of the United States and the Department of the Army. Specifically, the complaint alleges that appellees were negligent in the following ways:

A. In prescribing contraindicated medication;

B. In failing to aggressively treat, evaluate and properly diagnose the pregnancy condition;

C. In classifying and treating Mildred Irvin as a routine patient despite her medical history and condition;

D. In failing to have Mildred Irvin examined and treated by qualified medical personnel;

E. In failing to reclassify Mildred Irvin's medical condition as urgent; and

F. In generally failing to adhere to recognized acceptable medical standards of care.

Count two alleges that appellees' actions constituted a deprivation of the rights, privileges and immunities secured by the Constitution and laws of the United States in violation of section 1983.

---

1. Appellees have construed count two as a *Bivens* action, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), since section 1983 actions may be brought only against state actors and not the federal government. *See Hall v. United States*, 704 F.2d 246, 249 n. 1 (6th Cir.), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983). The Supreme Court has held that no *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to military service. *United States v. Stanley*, — U.S. —, 107 S.Ct. 3054, 3063, 97 L.Ed.2d 550 (1987). The district court did not analyze count two separately or even acknowledge the constitutional claim but held only that *United States v. Feres*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), barred the cause of action. This error on the district court's part is harmless since *Stanley* holds that abstention in *Bivens* actions must be as extensive as the exception to the FTCA established by *Feres* and *United States v. Johnson*, — U.S. —, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987). In any event, appellants make no separate arguments with respect to count two on appeal.

On May 6, 1987, the district court filed an order which dismissed the case for lack of subject matter jurisdiction. The court reasoned that Mildred Irvin's claim falls squarely into the incident to service test as currently defined by this circuit. Further, the court reasoned that the " 'treatment accorded [the] mother is inherently inseparable from the treatment accorded ... a fetus in [the] mother's body.' " *Irvin v. United States*, No. 86–2563–MA, Slip op. at 2 (W.D.Tenn. May 6, 1987) (quoting *Scales v. United States*, 685 F.2d 970, 974 (5th Cir.1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983)). Thus, the district court held that the *Feres* doctrine bars both the claims of the parents and the child arising from the alleged negligent prenatal care Mildred Irvin suffered in a military hospital while she was on active duty.

Appellants filed this timely appeal on May 29, 1987. This court must decide whether the *Feres* doctrine, *United States v. Feres*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), bars an action brought by a former active duty servicewoman for negligent prenatal care given during her enlistment. Additionally, we must decide whether the *Feres* doctrine bars an action brought by a former active duty servicewoman and her husband as parents and next friends of a deceased infant for negligent prenatal care given to the servicewoman, to her deceased infant while *in utero*, or to both during the servicewoman's enlistment.

## II.

In *Feres*, the Supreme Court held that the government is not liable under the FTCA for injuries to servicemen when the injuries arise out of or are in the course of activity incident to service. *United States v. Feres*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). The Supreme Court has recently reaffirmed the *Feres* doctrine in *United States v. Johnson*, ––– U.S. –––, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987). Although the specific question in *Johnson* concerned whether the *Feres* doctrine bars an action under the FTCA on

behalf of a service member killed during the course of activity incident to service when the complaint alleges negligence on the part of civilian employees of the federal government, the Court reconsidered the *Feres* doctrine and the policy behind it at length.

In *Johnson*, the Court identified three factors which underlie the *Feres* doctrine: 'First, the relationship between the Government and members of its Armed Forces is " 'distinctively federal in character,' "; it would make little sense to have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury. Second, the Veterans' Benefits Act establishes as a substitute for tort liability, a statutory 'no fault' compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government. A third factor ... [is] '[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty....'

*Johnson*, 107 S.Ct. at 2065 n. 2 (quoting *Stencel v. Aero Engineering Corp. v. United States*, 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977)) (citations omitted). The Court "reaffirm[ed] the holding of *Feres* that 'the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.' " *Johnson*, 107 S.Ct. at 2069. In *Johnson*, the *Feres* doctrine barred the action despite the non-military status of the alleged tortfeasor.

Prior to *Johnson*, in *Stencel v. Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the Supreme Court considered whether the United States is liable under the FTCA to indemnify a third party for damages paid by it to a member of the

armed forces injured in the course of military service. In *Stencel,* a private military manufacturer-supplier and the United States had been sued for injuries sustained by a serviceman which arose out of or in the course of activity incident to service. The private military manufacturer-supplier cross-claimed against the United States for indemnity. The serviceman's suit against the United States had been dismissed pursuant to *Feres* and was not before the Court. The Court reviewed only the private military manufacturer-supplier's claim for indemnity.

The Court considered the three factors underlying the *Feres* doctrine when evaluating the claim. The Court reasoned as follows:

> Clearly, the first factor considered in *Feres* operates with equal force in this case. The relationship between the Government and its suppliers of ordnance is certainly no less 'distinctively federal in character' than the relationship between the Government and its soldiers.... If, as the Court held in *Feres,* it makes no sense to permit the fortuity of the situs of the alleged negligence to affect the liability of the Government to a serviceman who sustains service-connected injuries, it makes equally little sense to permit that situs to affect the Government's liability to a Government contractor for the identical injury.
>
> The second factor considered by *Feres* is somewhat more difficult to apply....
>
> ... [However, g]iven the broad exposure of the Government, and the great variability in the potentially applicable tort law, the military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries. To permit petitioner's claim would circumvent this limitation, thereby frustrating one of the essential features of the Veterans' Benefits Act....
>
> Turning to the third factor, it seems quite clear that where the case concerns an injury sustained by a soldier while on duty, the effect of the action upon military discipline is identical whether the suit is brought by the soldier directly or by a third party. The litigation would take virtually the identical form in either case, and at issue would be the degree of fault, if any, on the part of the Government's agents and the effect upon the serviceman's safety. The trial would, in either case, involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions. This factor, too, weighs against permitting any recovery by petitioner against the United States.

*Stencel,* 431 U.S. at 672–73, 97 S.Ct. at 2058–59 (citations omitted).

With Supreme Court precedent in mind, we turn to a discussion of the specific issues involved in the instant case.

### A.

Appellants rely heavily on the Ninth Circuit case of *Atkinson v. United States,* 804 F.2d 561, *opinion withdrawn,* 825 F.2d 202 (9th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988), to support Ms. Irvin's individual claim. In *Atkinson,* a woman who was serving in the United States Army during the course of her pregnancy and delivery sued the United States alleging that as the result of negligent medical treatment she delivered a stillborn child and suffered physical and emotional injuries of her own. 825 F.2d at 203. In its original opinion, the Ninth Circuit evaluated Atkinson's claim in light of only the third policy factor identified by *Feres.* The court held that the facts in that case, viewed in light of the *Feres* doctrine's underlying disciplinary rationale, lead to the conclusion that the FTCA permitted Atkinson's cause of action. 804 F.2d at 564–65. This is the opinion relied on by appellants.

The Ninth Circuit, however, has withdrawn its original opinion in *Atkinson.* In light of the Supreme Court's reaffirmance of all three factors in *Feres,* that court has held that Ms. Atkinson's claim was barred by the FTCA. 825 F.2d at 205–06. The court held that although it believed that the

military discipline rationale did not support the application of the *Feres* doctrine in that case, the first two rationales support its application. *Id.* at 206.

Two additional circuits have also held that the servicewoman mother's claims were barred by the *Feres* doctrine in analogous prenatal care medical malpractice cases. The Fifth Circuit has adopted this position in *Scales v. United States*, 685 F.2d 970 (5th Cir.1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983). More recently, the Eleventh Circuit has taken this position in *Del Rio v. United States*, 833 F.2d 282 (11th Cir.1987). This is the position which we adopt today.

■ Ms. Irvin's individual claim is barred under a straightforward reading of *Feres*. Ms. Irvin was on active duty in the United States Army during the time in question, and the injuries to her arose out of or were in the course of activity incident to service. For these reasons, her individual claim must fail.

### B.

■ Appellants acknowledge that some circuits have construed *Feres* to bar claims of dependents of servicemen where the claim has its "genesis" in an injury to a serviceperson incident to military service. *See e.g., Lombard v. United States*, 690 F.2d 215, 226 (D.C.Cir.1982), *cert. denied*, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983); *Mondelli v. United States*, 711 F.2d 567 (3d Cir.1983), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984); *Monaco v. United States*, 661 F.2d 129 (9th Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). Appellants argue, however, that the genesis test ignores the basic rationale supporting the *Feres* decision. Thus, appellants would have us reject the genesis test adopted by other circuits in order to permit the claims on behalf of decedent Quintessa Irvin. We decline appellants' invitation to reject the genesis test.

The genesis test appears to have evolved from *Stencel. See e.g., Lombard*, 690 F.2d at 223–26; *Monaco*, 661 F.2d at 133. The cases which have applied the genesis test

have recognized that *Stencel* is not completely analogous since *Stencel* dealt with a *derivative claim* while these cases have dealt with an independent claim but a *derivative injury*. They have, however, followed the analysis in *Stencel* nonetheless. For example, *Monaco* involved the claims of the daughter of a serviceman exposed to radiation. The Ninth Circuit reasoned as follows:

Denise's case differs from *Stencel* in that she seeks relief for an injury to herself rather than indemnity for losses due to injury to her father, but this does not change the substantive analysis: the court still must examine the Government's activity in relation to military personnel on active duty. It is precisely this type of examination the *Feres* doctrine seeks to avoid. Courts have reflected this analysis in several cases rejecting the claims of non-military plaintiffs seeking recovery for independent injuries stemming from allegedly negligent acts against military personnel.

*Monaco*, 661 F.2d at 134.

Many other courts have also denied independent claims of family members when the genesis of the injury was an injury to an active duty service person. *See e.g., DeFont v. United States*, 453 F.2d 1239 (1st Cir.), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972) (serviceman's wife's mental anguish; child's loss of companionship); *Harrison v. United States*, 479 F.Supp. 529 (D.Conn.1979), *aff'd without opinion*, 622 F.2d 573 (2d Cir.), *cert. denied*, 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980) (serviceman's wife's loss of consortium); *Hinkie v. United States*, 715 F.2d 96 (3d Cir.1983), *cert. denied*, 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 680 (1984) (widow's miscarriages and children's birth defects caused by husband/father's exposure to radiation); *Mondelli v. United States*, 711 F.2d 567 (3d Cir.1983), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984) (child's cancer caused by father's exposure to radiation); *West v. United States*, 744 F.2d 1317 (7th Cir.1984), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2113, 85 L.Ed.2d 478 (1985)

(vacating opinion reported at 729 F.2d 1120 which had held that there was a cause of action for injuries suffered by children allegedly resulting from negligent typing of father's blood at the time of induction).

Additionally, in *Scales*, the Fifth Circuit held that the *Feres* doctrine barred an infant's claims in a situation similar to the instant case. The court noted:

> The treatment accorded his mother is inherently inseparable from the treatment accorded Charles as a fetus in his mother's body. Consequently, the district court's analysis is the same whether the suit is brought by Charles or Ms. Scales. In either instance, the judge is placed in the position of questioning the propriety of decisions or conduct of fellow members of the Armed Forces. This is precisely the type of examination that *Feres* seeks to avoid.

*Scales*, 685 F.2d at 974.

This is the position which we adopt today. We note that the Eleventh Circuit has taken a different approach in *Del Rio*. *Del Rio*, 833 F.2d at 286–88. In *Del Rio*, the court allowed an action for negligent prenatal care to be brought by a surviving infant simply because the infant would have had an independent claim against a civilian physician under state law. *Id.* at 286 & n. 2. *Feres* expressly refused to hold that the government had waived immunity simply because a *civilian* doctor would be liable for medical malpractice in an analogous situation. *Feres*, 340 U.S. at 142, 71 S.Ct. at 157. *Del Rio*, however, does not cite to any state, nor do we know of one, which has permitted surviving infants to sue the state militia for injuries resulting from negligent prenatal care received by their mothers while on active duty and incident to military service. Additionally, the cases cited in *Del Rio* for the proposition that the *Feres* doctrine does not bar claims of medical malpractice brought by dependents of service members, *Del Rio*, 833 F.2d at 286–87, are inapposite since they all involve independent injuries to the complainant dependents. Finally, we are persuaded that the genesis test is consistent with what this court has de-

scribed as the Supreme Court's recent embarkment on a course dedicated to the broadening of the *Feres* doctrine. *See Major v. United States*, 835 F.2d 641, 644 (6th Cir.1987) (per curiam), *petition for cert. filed*, —— U.S. ——, 108 S.Ct. ——, 99 L.Ed.2d 499 (1988).

For the foregoing reasons, the district court's judgment is AFFIRMED.